**USX CORPORATION, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RICH), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1999.

Decided March 16, 1999.

Marie Jurbala Shiring, Pittsburgh, for petitioner.

Martin Singer, Pittsburgh, for respondent.

Before PELLEGRINI, J., KELLEY, J., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

USX Corporation (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) that no deduction could be made for that portion of his hearing loss that was attributable to aging when it awarded hearing loss benefits to Donald Rich (Claimant).

The relevant facts of this case are not in dispute. Claimant began working for Employer in 1953 in various positions in a steel mill. In 1995, he filed a claim petition, which Employer opposed, alleging that he had suffered binaural hearing loss as a result of long and continuous exposure to excessive noise while in the course of his employment. At the hearing before the WCJ, Claimant testified that during the course of his employment, he was exposed to noise from various sources including sirens, steam pipes and horns. As a result of that noise, he testified that his hearing had been impaired to the extent that he had to wear hearing aids in both of his ears.

Claimant also offered the testimony of Roger L. Duerksen, M.D., a board certified otolarynologist. Dr. Duerksen testified that he examined Claimant in July of 1995 and administered an audiogram, concluding that Claimant had suffered a work-related 30% bilateral hearing loss according to the American Medical Association's Guide to the Evaluation of Permanent Impairments (AMA Guides), the standard required to be used in measuring occupational hearing loss under Act 1 of 1995, Act of February 22, 1995, P.L. 1, the hearing loss amendments to Section 306(c)(8)(i) of the Workers' Compensation Act (Act).[1]

Employer introduced the testimony of Douglas Chen, M.D., also board certified in otolarynology, who testified that Claimant suffered binaural hearing loss of 20.5% ac-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77   P.S. § 513(8)(i).

cording to the AMA Guides attributable to Claimant's exposure to occupational noise. Dr. Chen, however, went on to testify that the AMA Guides did not take into account the effects of aging on hearing and, using the International Standard for 1999 of the International Organization for Standardization (ISO 1999), determined that of the 20.5% hearing loss suffered by Claimant, 6.8% of that number was due to aging.[2]

Finding that Claimant was exposed to a long and continuous exposure to work-related hazardous noise, the WCJ found that Claimant suffered a 20.5% bilateral hearing loss. In making this finding, he stated that he relied on Dr. Chen's opinion insofar as it related to the total hearing loss, but did not deduct the 6.8% hearing loss per the ISO 1999 standard that Dr. Chen attributed to normal aging. The WCJ determined that such a deduction was not permitted by the Act which only allowed the use of the AMA Guidelines to measure hearing loss. Based on a bilateral hearing loss of 20.5%, the WCJ awarded Claimant 53.5 weeks of benefits. Employer appealed to the Board which affirmed, and this appeal followed.

Employer contends, as it did before the Board, that evidence concerning the percentage of Claimant's hearing loss that was due to natural aging, utilizing the ISO 1999 standard, should not be excluded as a matter of law. Although Section 306(c)(8)(i) (the AMA Guideline Section) requires the use of the AMA Guidelines to determine the amount of hearing loss caused by long-term exposure to occupational noise and other occupational factors, it argues that provision only measures total hearing loss and does not foreclose the use of other guidelines that calculate the amount of hearing loss caused by non-occupational factors such as aging. Because Sec-

tion 306(c)(8)(vi) (Causation Section)[3] clearly provides that an employer is only liable for the hearing impairment it causes, Employer contends that a medical expert is permitted to give an opinion as to what portion of a claimant's hearing loss was not caused by exposure to noise while the claimant was employed by that employer.[4]

The Causation Section is the only section in the Act 1 amendments that mentions non-occupational hearing loss and provides:

> An employer shall be liable only for the amount of hearing impairment caused by such employer. If previous occupational hearing loss or **hearing impairment from non-occupational causes is established at or prior to the time of employment,** the employer shall not be liable for the hearing impairment so established whether or not compensation has previously been paid or awarded. (Emphasis added.)

Section 306(c)(8)(vi) of the Act, 77 P.S. § 513(8)(vi).

To interpret this provision as Employer suggests to allow for a deduction from a hearing loss calculation for everything and anything not related to its employment, including aging—and regardless of when it occurs—would mean that the General Assembly intended to vitiate the normal principle that an employer is responsible for a disability caused by a combination of work-related and non-work related factors if the work-related factors were a substantial contributing factor to the injury even though a claimant may have been more susceptible to that type of injury because of his age or preexisting condition. *See Kusenko v. Republic Steel Corp.*, 506 Pa. 104, 484 A.2d 374 (1984). Nothing in the language, however, suggests that such an interpretation is a fair reading of this provision.[5] Because of the inclusion

2. Dr. Chen noted that he was applying a mathematical formula based on Claimant's age to determine the amount of hearing loss attributable to aging, and that it was impossible to determine the exact amount of hearing loss caused by aging when there were multiple factors present.

3. 77 P.S. § 513(8)(vi).

4. Section 306(c)(8)(iv) provides:
    The percentage of hearing impairment for which compensation may be payable shall be

established solely by audiogram. The audiometric testing must conform to OSHA Occupational Noise Exposure Standards, 29 C.F.R. Part 1910.95 (relating to occupational noise exposure) and Appendices C, D and E to Part 1910.95 (July 1, 1994).
    77 P.S. § 513(8)(iv).

5. Employer's argument is essentially that the age-related hearing loss would have happened even if Claimant were never exposed to any occupational noise, and, therefore, it should not

of the phrase "at or prior to the time of employment," a more reasonable interpretation is that this provision simply dispenses with the "last injurious exposure rule" that the last employer with which Claimant is employed and is cumulatively exposed to hazardous occupational noise is responsible for all work-related loss of hearing throughout the claimant's working life, not just for the hearing loss caused by his employment with that specific employer. *See NGK Metals Corporation v. Workmen's Compensation Appeal Board (Sellari)*, 698 A.2d 1372 (Pa. Cmwlth.1997).[6] In order for an employer not to be responsible for a hearing impairment under this provision, it must prove that the non-occupational cause of hearing loss, i.e. age-related hearing loss, was present at or prior to the time of employment. Of course, if the employer can show that the hearing loss was caused by a non-work-related injury or disease, it is not liable for that portion of the hearing loss; however, living, no matter how hard it is or was, is not considered an injury or disease.

be responsible for that amount of hearing loss. The difficulty caused by including the normal wear and tear of life, as suggested by Employer, is that it creates confusion in deciding which factor caused a certain percentage of hearing loss and in what sequence the loss occurred, making it a measurement as well as a causation problem. For example, in this case, Claimant worked for Employer for forty-three years. Because of the length of time that he was exposed to hazardous occupational noise, he could have lost his hearing early on in his working life that he would have eventually lost later as he normally aged. To prove this, testimony would be required from Claimant regarding all the noise he had been exposed to during the early years he worked for Employer and that his hearing loss that would normally be attributable to aging was already impaired long before that time. Another example, also using Claimant's forty-three years of employment, is that Claimant spent one-third of his time at work being exposed to industrial noise and, while working, he necessarily aged and lost some hearing as a result. How then can we measure what amount of his hearing loss *is* attributable to each cause? Some might say that we need not make that determination because Claimant was going to lose some of his hearing anyway as he aged. However, that is like saying that if a claimant dies in an industrial accident, benefits should not be paid because he was going to eventually die anyway. While that comment is made facetiously, these examples do point out that contrary to Employer's contention, hearing

The legislative history of Act 1 also indicates that a more reasonable interpretation of the *Causation Section does not allow for* an age-related reduction. Prior to Act 1, a claimant had to suffer a complete work-induced hearing loss for all practical intents and purposes.[7] After the enactment of Act 1 of 1995, however, pursuant to Section 306(c)(8)(iii) compensation was payable on a sliding scale based on the degree of work-related hearing loss between 10% and 75%. Section 306(c)(8)(iii) provides:

Notwithstanding the provisions of subclauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or less than ten per centum, no benefits shall be payable. Notwithstanding the provisions of subclauses (i) and (ii) of this clause, if there is a level of binaural hearing impairment as calculated under the Impairment Guides which is equal to or more than seventy-five per centum, there shall be a presumption that the hearing impairment is total and com-

loss due to aging presents both a causation and measurement problem.

6. While not approaching the issue as one of statutory construction but as a factual question, in *Cooper Power Systems v. Workers' Compensation Appeal Board (McFarland)*, 722 A.2d 746 (Pa.Cmwlth.1998), we found that a WCJ properly excluded an age-related percentage deduction in a hearing loss case stating:

The WCJ's decision to refrain from applying an across-the-board hearing loss age reduction without direction from the General Assembly to do so, does not constitute an irrational reason for rejecting the [e]mployer's theory of causation.... The General Assembly directed physicians to employ the American Medical Association Impairment Guides in assessing hearing loss for workers' compensation purposes. *It is certainly reasonable for a WCJ to determine hearing loss compensability based on application of the standard specified in the Act.*
*Id.* at 750.

7. Before the enactment of Act 1 of 1995, Section 306(c)(8) provided:

For the complete loss of hearing, in both ears, sixty-six and two-thirds per centum of wages during two hundred sixty weeks; for complete loss of hearing in one ear; sixty-six and two-thirds per centum of wages during sixty weeks.

plete, and benefits shall be payable for two-hundred sixty weeks.

77 P.S. § 513(8)(iii).

That Section as passed in its present form was a result of Amendment No. A0380 to House Bill 3 (upon passage by House and Senate and signed by the Governor into law as Act 1) to a previous version of the bill that would have allowed a deduction from hearing loss as a result of aging. The sponsor of the amendment, Representative Lloyd, stated that it would have the following effect: [8]

> Essentially [the amendment] does three things. **Number one, it removes from the bill the provision which says that once you reach age 40, that any claim thereafter, you deduct half a percent a year from whatever the hearing loss test shows.** Number two, it says that there is no hearing loss benefit paid unless you pass a threshold of at least 10–percent hearing loss. Number three, it says that if your hearing loss is in excess of 75 percent according to the test, you are entitled or the presumption is that you get 100–percent benefit. (Emphasis added.)

Legislative Journal–House, No.9, January 30, 1995, p. 320.

Representative Lloyd's statement and, more importantly, the amendment taking out the aging requirement, establishes that the General Assembly initially considered an age-related deduction, but rejected that pro-

posal by amending HB. 3 to eliminate that requirement and instead place a minimum threshold of a 10% level of hearing loss before a claimant would be eligible for benefits.[9] The consideration of the history of Section 306(c)(8)(iii) and the fact that the plain language of Act 1 does not allow for an age-related deduction indicates that the General Assembly did not intend to allow an age-related deduction from the total percentage of hearing impairment.[10] Because the General Assembly knew how to provide for a deduction for normal aging and did not, and the legislature specifically provided that the AMA Guidelines were to be used, we can only conclude that the General Assembly intended to exclude ISO 1999 as a standard of measurement, even if it allowed an age-reduction.[11] Just as in a case where an employee suffers a back injury, absent a clear expression from the General Assembly, we would not terminate or suspend benefits simply because a claimant could have returned to work in half the time but for the normal wear and tear of life as a result of aging. We similarly will not do so here.

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 16th day of March, 1999, the order of the Workers' Compensation Ap-

---

8. While statements made by legislators during the enactment process are not dispositive of legislative intent, they may be properly considered as part of the contemporaneous legislative history. *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998).

9. Although the Act provides that a 10% hearing loss is required before a claimant may receive benefits, it does not similarly provide for a 10% **deduction** from the percentage of hearing loss sustained by a claimant. This could reasonably explain the situation we discussed in footnote 4, *supra*, where Claimant quite possibly could have lost early in his working career the amount of hearing loss that he allegedly would have suffered due to age had he never been exposed to occupational noise.

10. Other states do provide a deduction for age-related hearing loss in their statutes. Maryland and Montana each allow a half a decibel deduction from the total average decibel hearing loss for each year the employee's age is over 40. *See*

Md.Code. Ann. § 9–650; Mont.Code Ann. § 39–71–805. South Dakota provides that one-half decibel shall be deducted from the total average decibel loss for each year of the employee's age over 45 before determining the percentage of hearing impairment. *See* S.D. Codified Laws Ann. § 6–9–5 (1986). Section 85B.9A of the Iowa Code also provides for a deduction for age-related hearing loss.

11. Where certain things are specifically designated in a statute, all omissions should be understood as exclusions are applicable. *Latella v. Unemployment Compensation Board of Review*, 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983); *see also Kashuba v. Workers' Compensation Appeal Board (Hickox Construction)*, 713 A.2d 169 (Pa.Cmwlth. 1998) (court will not add other non-monetary remuneration to the calculation of a claimant's average weekly wage where the Act only specifically provides for room and board).

peal Board at No. A97–1735 dated May 27, 1998, is affirmed.