**USX CORPORATION (Clairton), Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LABASH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 25, 2001.

Decided Dec. 12, 2001.

---

Marie Jurbala Shiring, Pittsburgh, for petitioner.

Joseph J. Cirilano, Pittsburgh, for respondent.

Before SMITH, Judge, FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

SMITH, Judge.[1]

USX Corporation (Employer) appeals from an order of the Workers' Compensation Appeal Board which affirmed the decision of a Workers' Compensation Judge (WCJ) ordering Employer to pay workers' compensation benefits to JoAnn Labash, the widow of Joseph Labash (Claimant). Employer contends that the WCJ erred by rejecting the audiogram presented by Employer, by not rejecting the audiogram presented by Claimant, by shifting the burden of proof to Employer to establish that Claimant's hearing loss was not due to his employment with Employer, by accepting certain testimony on Claimant's expo-

sure to noise while working for Employer and by refusing to dismiss the claim petition on grounds that Employer was prejudiced by its inability to examine Claimant.

Claimant worked for Employer in the coke and handling department of its U.S. Steel/Clairton Works plant (Clairton Works) from August 1951 until February 1995. Claimant filed a claim petition against Employer on January 26, 1998, alleging that he had suffered a hearing loss as a result of long-term exposure to occupational noise throughout his career with Employer. On March 13, 1998, Claimant died due to a ruptured abdominal aneurysm.[2] In support of the petition, Claimant presented testimony from JoAnn Labash, Andrew M. Labash, Robert D. Wise and Dr. Stephen M. Froman, board certified in otolaryngology. JoAnn Labash testified that she married Claimant in 1953, and was living with him and was financially dependent upon him at the time of his death.

Andrew Labash testified that Claimant was his brother and also his co-worker. Labash started working for Employer in 1951 or 1952 and last worked for Employer in 1982. Most of that time, he was assigned to Clairton Works, where his job required him to work along the coke batteries every day. At those times, he was able to see Claimant; sometimes Claimant would be working only about 20 feet away from him. Labash described loud noises to which Claimant would be exposed during the work day and noted that neither he nor Claimant wore any hearing protection. Robert Wise testified that he had been employed with Employer for over 28 years commencing in 1970 and that he had always worked at Clairton Works. Wise worked in the same department as Claim-

---

1. This matter was reassigned to the opinion writer on September 11, 2001.

2. There is no contention that Claimant's death was related to his work for Employer.

ant, but across railroad tracks approximately 50 feet away. Wise described loud noises, such as safety whistles, sirens, air pressure release valves and coke falling into cars among other noises. Anyone working in the department would have been exposed to those noises. Carrying earplugs has been mandatory in the department for the past six or seven years.

Dr. Froman examined Claimant on January 26, 1996 and performed a complete otolaryngolic examination on him at that time. A certified audiologist performed audiometric testing on Claimant on the same day, which revealed a mild to severe neurosensory hearing loss bilaterally. Dr. Froman calculated Claimant's hearing loss as a 31.25 percent binaural handicap, and he opined that the loss was attributable to Claimant's total and cumulative exposure to loud noise during his years of employment by Employer. Dr. Froman could not completely rule out presbicusis as playing some role in Claimant's impairment, but he provided unequivocal medical testimony that Claimant was exposed to noise of loud levels on a continuous basis during his employment. Dr. Froman did not review any audiograms taken of Claimant at Clairton Works.

In opposition to the petition, Employer presented testimony from Lucille M. Micenko and a report from Dr. Douglas A. Chen, board certified in otolaryngology and otology neurotology. Micenko is a registered nurse, certified for audiometric testing, who is employed by a health system and contracted to conduct audiometric testing at Clairton Works among other duties. Micenko identified the computer report of an audiometric test that she performed on Claimant on October 19, 1994. On cross-examination, counsel for Claimant questioned Micenko on whether the audiometric test was conducted in conformance with Occupational Safety and Health Administration (OSHA) requirements. Micenko was not aware whether OSHA has requirements for how an audiogram is to be conducted or whether OSHA has requirements for how audiometric machines are to be calibrated.

In Dr. Chen's report, he calculated that the test performed by Micenko on October 19, 1994 showed that Claimant had a 12.5 percent binaural impairment at the end of his career with Employer. Dr. Chen opined that any progression in Claimant's impairment thereafter could not be attributed to noise exposure from Clairton Works, and he speculated that unidentified antibiotics administered to Claimant when he underwent two operations might have been ototoxic. Dr. Chen also opined that Claimant's hearing loss might have been caused by exposure to noise during gun shooting and body repair work.

■ The WCJ found the testimonies of JoAnn Labash, Andrew M. Labash and Lucille Micenko credible. The WCJ rejected the opinion of Dr. Chen to the extent that his opinion contradicted that of Dr. Froman, upon whom the WCJ relied as competent and credible. Part of the reason that the WCJ provided for rejecting Dr. Chen's opinion in favor of Dr. Froman's opinion was that Dr. Chen relied upon the October 1994 audiogram conducted by Micenko. The WCJ explained that while the record established that Micenko was qualified to perform the study, the WCJ could not find as a fact that the October 1994 audiogram complied with OSHA standards because there was no competent evidence of record to establish that the equipment used in the audiogram complied with OSHA standards. Accordingly, the WCJ granted Claimant's petition, and the Board affirmed.[3]

3. The Court's review of the Board's order is    limited to determining whether constitutional

■ Employer first argues that the WCJ erred in rejecting the October 1994 audiogram because it was admitted into the record by the parties without objection. The WCJ did not refuse to admit the October 1994 audiogram into the evidentiary record. Rather the WCJ was simply persuaded by Claimant's cross-examination of Micenko in deciding not to rely upon the 1994 audiogram, and Dr. Chen's reliance on that audiogram, among other things, led the WCJ to find Dr. Froman's opinion to be more credible than Dr. Chen's opinion. It is well established that the WCJ, as the ultimate factfinder, may accept or reject any testimony, including the medical opinion of one expert witness over that of another. *New Enterprise Stone & Lime v. Workmen's Compensation Appeal Board (Baird)*, 124 Pa. Cmwlth.257, 555 A.2d 974 (1989). The WCJ's rejection of one medical witness' testimony in favor of another medical witness is a credibility determination which this Court will not disturb. *Wynn v. Workmen's Compensation Appeal Board (Department of Transportation)*, 77 Pa. Cmwlth.631, 466 A.2d 769 (1983).

■ Employer next argues that if the WCJ correctly rejected the October 1994 audiogram due to the absence of evidence that it conformed to OSHA standards, then the WCJ was required also to reject the January 1996 audiogram on the same grounds.[4] Employer had ample opportunity to cross-examine Dr. Froman but chose not to question him concerning the 1996 audiogram's conformity to OSHA standards and never raised the issue before

the WCJ. The Board noted that Dr. Froman presented the qualifications of his audiologist and provided calibration records. The Board correctly concluded that Employer has now waived the issue. *Fruehauf Trailer Corp. v. Workers' Compensation Appeal Board (Barnhart)*, 784 A.2d 874 (Pa.Cmwlth.2001). Moreover, the WCJ was at liberty to rely upon an audiogram where the record reveals no evidence that it was not performed in accordance with OSHA standards. *Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Graaf)*, 768 A.2d 1237 (Pa.Cmwlth. 2001).

■ Employer argues that the WCJ incorrectly shifted the burden to Employer to establish that Claimant's hearing loss was not due to his employment with Employer. This Court has explained that in order to meet the burden under Section 306(c)(8)(i) of the Workers' Compensation Act, Act of June 2, 1915 P.L. 736, as amended, 77 P.S. § 513(8)(i), a claimant must *prima facie* establish that he or she was exposed to occupational noise while working for the employer during the three years that precede the claim. Thereafter, the employer bears the burden to establish that the claimant's noise exposure was not hazardous occupational noise or that the claimant did not have long-term exposure to hazardous noise. *Meadville Forging Co. v. Workers' Compensation Appeal Board (Artman)*, 747 A.2d 958 (Pa. Cmwlth.2000). In this case, the WCJ found that Claimant met his initial burden, and that finding is supported by substan-

rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988).

4. Claimant fully cross-examined Micenko concerning the 1994 audiogram's conformity to OSHA standards, and Claimant properly notes that allowing the admission of test results into the record does not prohibit challenge to the merits of the evidence as Employer contends.

tial evidence. The burden then properly shifted to Employer.

■ Employer contends that the WCJ erred in admitting the testimony of Andrew Labash and Robert Wise. Employer argues that the testimonies of these witnesses should have been excluded on relevancy grounds because neither witness worked side-by-side with Claimant or held the same job as Claimant. Employer maintains that these two witnesses could therefore only testify about their own noise exposure at Clairton Works, which is not relevant to this litigation. Section 422 of the Act, 77 P.S. § 834, provides that the Board and WCJs are not "bound by the common law or statutory rules of evidence in conducting any hearing or investigation," but "all findings of fact shall be based upon sufficient competent evidence to justify same."

■ The Court has interpreted Section 422 to permit a liberal information gathering process that favors admitting all evidence into the record but to not allow arbitrary disregard of the rules of evidence. *Anzaldo v. Workmen's Compensation Appeal Board (M & M Restaurant and Supply Co.)*, 667 A.2d 488 (Pa. Cmwlth.1995). To be relevant, proffered evidence need merely tend to make the fact at issue more or less probable and be in some degree probative of the inquiry. *Werner v. Workmen's Compensation Appeal Board (Brother's Trucking)*, 663 A.2d 896 (Pa.Cmwlth.1995). Both witnesses worked in the same facility as Claimant for part of the time while he worked for Employer, and both witnesses had the opportunity to observe Claimant's working conditions. Accordingly, both witnesses were able to provide direct evidence probative of a material issue in this litigation, and Employer's relevancy argument is wholly without merit.

■ Lastly, Employer argues that the WCJ erred in failing to dismiss Claimant's petition on grounds that Employer was prejudiced by its inability to examine Claimant. Employer had full access to Claimant's medical records to allow its expert to form an opinion, and Employer was able to defend against the petition even though Claimant died before Employer could examine him. Employer does not contend that the WCJ failed to do anything to mitigate any prejudice against it short of dismissing the petition. Denying Claimant all opportunity to seek compensation by dismissing his petition would clearly have been inappropriate in this case. The Board's order is affirmed.

### *ORDER*

AND NOW, this 12th day of December, 2001, the order of the Workers' Compensation Appeal Board is affirmed.

McCLOSKEY, Senior Judge, Dissenting.

I respectfully dissent as I disagree with the majority's finding that the Workers' Compensation Appeal Board (Board) correctly concluded that USX Corporation (Clairton) (hereafter Employer) had waived any issue regarding the submission of the audiogram of Dr. Stephen Froman, Claimant's medical witness, by failing to object to its admission into the record. I do not dispute that a Workers' Compensation Judge (WCJ) is at liberty to rely upon an audiogram where the record reveals no evidence that it was not performed in accordance with OSHA standards. *See Bethlehem Steel Corporation v. Workers' Compensation Appeal Board (Graaf)*, 768 A.2d 1237 (Pa.Cmwlth.2001). However, I do disagree with the majority's application of this principle to the facts of this case.

Here, both Employer and JoAnn Labash, widow of Joseph Labash and hereafter referred to as Claimant, presented audiometric test results and testimony in

support of the same.[1] The results of both audiograms were admitted into evidence without objection. Admittedly, counsel for Employer chose not to question Dr. Froman regarding applicable OSHA standards, while counsel for Claimant did so question Nurse Micenko.

However, Nurse Micenko simply testified on cross-examination that she was "not real clear on what OSHA's guidelines [were]" and that she "[didn't] know" what the OSHA requirements were, if any, with respect to conducting the audiometric testing and calibrating the equipment. (R.R. at 49a 51a). This testimony of Nurse Micenko did not constitute evidence that the audiogram she conducted on Claimant did not meet OSHA standards. Rather, the question remained whether or not the audiogram actually met these standards. Hence, I believe that the WCJ erred by rejecting Employer's audiogram for its purported failure to comply with OSHA standards. Further, I do not believe that said testimony is a sufficient basis upon which to reject Employer's audiogram under *Graaf*, as the majority so holds.

Moreover, by relying on the testimony of Nurse Micenko, as well as Employer's lack of cross-examination of Dr. Froman, the majority essentially renders cross-examination tantamount to placing an objection on the record. I do not believe that testimony in the form of cross-examination can ever replace and/or act as a substitute for objecting to the submission of evidence into the record. For these reasons, I would vacate the order of the Board and remand the matter to the Board, with specific instructions to remand the case to the WCJ for further findings of fact and

conclusions of law regarding both audiograms.

---

1. Claimant presented the testimony of Dr. Froman, while Employer presented the testimony of Lucille Micenko, a registered nurse with South Hills Health System, which in turn is contracted with Employer to conduct audiometric testing services.